[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The forty-two year old plaintiff wife has brought this action CT Page 4850 against the forty-three year old defendant husband seeking a dissolution of their marriage that occurred on August 22, 1980 in the State of Vermont. No child has been born to the plaintiff since that date.
At the time of the marriage the plaintiff was a social worker. She received an Associate's Degree in 1981, a Bachelor's Degree in 1983 and a Master's Degree in 1984. The plaintiff was employed by DCYS from 1985 until 1989 when she became ill. The defendant had made application for social security disability benefits and his award was received about the time of the marriage. After the marriage the defendant moved from his parents' home to the plaintiff's home which was then owned and occupied also by the plaintiff's parents. The plaintiff was the custodial parent for two minor children who qualified for social security monthly income benefit checks as step-children of the defendant as did the plaintiff who qualified as the defendant's spouse. All of the social security checks were received and deposited by the plaintiff who then paid all the bills from the time of the marriage until the time she became ill in November, 1988. The illness lasted through December, 1989. The defendant assumed the family budget management in December, 1988 and continued to manage the budget for the following year.
The defendant had sustained a back injury in 1978 which led to a workers' compensation claim and then to the social security disability. He has not worked during the marriage. However, during the marriage he had received money from his parents.
In March, 1989, the plaintiff's parents transferred the ownership of the real estate to the plaintiff and the defendant, being motivated to do so as a result of an aneurysm that the plaintiff's father has sustained. The parties proceeded to conduct an extensive renovation of the house, spending approximately $80,000 in doing so. Each party contributed approximately $40,000 to the project and the plaintiff's parents also paid for certain miscellaneous items. This was in keeping with the parents' pattern of paying for expenses but not paying rent after they conveyed the property to the plaintiff and the defendant. The plaintiff and the defendant testified to somewhat varying versions of what the remaining bills are and what the responsibility is for the payment of them. The court will make an allocation for responsibility as part of the judgment. There is presently a $60,000 first mortgage on the real estate which the court finds has a fair market value of approximately $135,000. Therefore, the court concludes that the parties spent more money on the property than now exists in the present net equity.
The plaintiff claims the marriage broke down some time in 1989 or 1990 when she discovered that the defendant was leading a CT Page 4851 second, secret life engaging in other activities which the court finds unnecessary to discuss in detail in this opinion, since the court finds his behavior was the prime cause for the breakdown. The defendant maintains that the marriage never really was functional because of the extended family that existed in the house which included his step-children, his step-parents and his step-brother that lived on another floor in the same house. The court does not lend credibility to this claim because all this was known to the defendant when he married the plaintiff and they had been acquainted for some time. The court further finds that the parties succeeded in spending money that exceeded their joint incomes and they managed to spend most of their capital during the marriage. Very little remains to be divided except for the list of debts on the financial affidavits and the equity in the house. The court is satisfied that the plaintiff has the greater earning capacity and the greater ability to acquire capital assets in the future.
Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment.
1. A decree is entered on the ground of irretrievable breakdown alleged in the first count of complaint. Counts two and three of the complaint are dismissed as moot.
2. The real estate known as 218 Fairfield Avenue, Waterbury, Connecticut is ordered sold. The plaintiff is awarded exclusive possession of the premises until title is conveyed and the net proceeds received from the sale. The plaintiff is given the exclusive right to select the real estate broker to expose the property for sale and the property is to be listed for sale for 90 days for the price recommended by the broker selected by the plaintiff. The defendant is ordered to sign the exclusive listing agreement and any other supporting documents necessary to expose the property for sale. The mortgage payments will continue to be paid from the disability insurance that is being received by the plaintiff at the present time. In the event that this disability insurance is terminated or suspended, the parties are ordered to each contribute 50% of the monthly mortgage payments in order to keep the encumbrances current. At the end of 90 days if no ready, willing and able buyer has been found to purchase the property, either party may move the court for an articulation of further either party may move the court for an articulation of further details of how to proceed with the sale of the real estate. If neither party so moves, the plaintiff may continue to employ a real estate broker of her choice for successive 90 day periods. At the end of any such period, either party shall so move as outlined above.
3. Each party will retain the items of tangible personal CT Page 4852 property each now has in his or her possession except the defendant shall be entitled to remove the following items from the former marital home:
 a. All items listed on the attached Appendix A entitled "Inventory of Shed" except he shall not remove the cans of paint used for the house, the screens for the doors and windows, one rake, one shovel, and one box of general household tools such as a hammer, a screw driver, a phillips screw driver, one pair of pliers, and a wrench;
 b. Oak desk and maple desk with contents;
c. Therapeutic chair;
d. Oak wash table;
 e. 1984 Mercury Lynx and 1979 Cadillac Seville motor vehicles;
 f. Any men's jewelry belonging to the defendant;
 g. All personal documents and books belonging to the defendant;
 h. Any items of tangible personal property given to the defendant from his parents.
4. The plaintiff shall retain as her sole property the 1987 Chevrolet Camaro and the 1988 Honda Civic motor vehicles. The plaintiff shall assume and be solely responsible for the GMAC loan that is secured by the 1987 Camaro.
5. The plaintiff shall be solely responsible for the payment of the following liabilities:
 Service Merchandise Radio Shack Lane Bryant Lerner Fashion Bug American Rooter Mrs. E. Raimo Mr. Raimo Terri Fayer CT Page 4853 Student Loans Lehigh Fuel Middlebury Animal Hospital William Tylec J. C. Penney Caldors
6. The defendant shall be solely responsible for the following liabilities:
 QVC Waterbury Firefighters Credit Union PSE Master Card
7. The following remaining liabilities shall be paid from the proceeds of the closing before the net proceeds are distributed to either party. The court order is intended to bring about an equal responsibility for said debts:
 Sears City Bank Visa/Master Card Chase Visa/Master Card Discover Card Bank of New York Master Card MBNA Master Card/Visa IRS bill bal. due for 1988 joint tax return
8. After all expenses of closing have been paid, upon sale of the real estate and after the foregoing paragraph has been complied with, the remaining net proceeds from the sale shall be distributed 75% to the plaintiff and 25% to the defendant.
9. The court makes no order of periodic alimony in favor of either party.
10. Each party shall be solely responsible for the legal expenses incurred in the trial of this matter. All remaining assets listed on the affidavit of each party shall remain the property of that party unless the judgment has reassigned ownership except that the shares of Heritage Bank shall be assigned to the plaintiff by the defendant.
The attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.
APPENDIX A CT Page 4854
INVENTORY OF SHED
1. Numerous shelving (small) 2. Paint and paint brushes for house; 3. Insect sprays; 4. Lawn seeding (6 bags); 5. two windshield washer fluids; 6. one brown hand truck; 7. Extra light fixtures; 8. Extension cords; 9. Dishes (plastic) Joe's; 10. Clamps; 11. Light bulbs; 12. Screens for doors and windows; 13. One leaf shreader; 14. Plastic glassware; 15. One box of car tapes; 16. Two boxes of misc. tools; 17. Table saw and table; 18. Two desks; 19. One coin box; 20. Cement mixer; 21. One chain saw (electric); 22. Numerous assortment of nails; 23. Box of screw drivers; 24. Two hand saws; 25. Two hack saws; 26. 3 foot level; 27. 2 Garden hoses; 28. 1 spray tank; 29. 1 clock; 30. Rakes and shovels